IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DSW, Inc.,                          :

    Plaintiff,                  :       Case No. 2:11-cv-0036

  v.                                :       Magistrate Judge Kemp

Zina Eva, Inc.,                     :

    Defendant.                  :


OPINION AND ORDER

    This case was referred to the Magistrate Judge for complete disposition based on the consent of the parties and pursuant to 28 U.S.C. §636(c). As part of the Court's usual case management practice, the case was referred to a volunteer mediator as part of the Court's settlement week program. In August, 2011, the mediator reported that the case had settled and that an agreed dismissal entry would be submitted by August 15, 2011.

    The parties did not submit an entry by that date. Rather, on September 29, 2011, DSW noticed Zina Eva's deposition. Zina Eva responded by filing a motion to enforce the parties' purported settlement agreement and by moving for a protective order preventing the deposition from going forward. Those motions, as well as a motion to strike DSW's response to the motion to enforce the settlement agreement, are all pending. For the following reasons, the Court will grant the motion to enforce, deny the motion to strike (but keep the response under seal), and deny as moot the motion for a protective order.

I. Background Facts

    This case arises out of a contract dispute between

1

Plaintiff, DSW, and Defendant, Zina Eva, Inc. DSW alleges in its complaint (#2) that it had ordered handbags from Zina Eva on three separate occasions, and that the handbags which were delivered did not match the samples Zina Eva previously provided and did not meet DSW's quality specifications.

On August 9, 2011 the parties engaged in mediation. At some point, it appeared that an agreement had been reached. The attorneys who represented DSW and Zina Eva at the mediation then prepared and signed a handwritten document outlining the terms of the agreement. A copy of this document is attached to Zina Eva's Motion to Enforce the Settlement Agreement. DSW does not appear to dispute that it is the same document that was signed at the end of the mediation conference. Without reciting the document's contents in full, it states that the parties "wish to resolve the case and hereby agree as follows:" What follows are payment terms as well as an agreement that Zina Eva and its principal will execute a promissory note containing those terms, that judgment may be taken in a greater amount if Zina Eva defaults, and that Zina Eva would be entitled to written notice and an opportunity to cure any default within twenty days of the receipt of notice. The document does not state that it is contingent upon any other events or conditions, nor does it indicate that it was not intended to be effective immediately.

According to the exhibits attached to DSW's response to the motion to enforce (#31), on August 12, 2011, three days after this handwritten document was signed, counsel for DSW emailed Zina Eva a formal settlement agreement. Its operative terms (those relating to payment) are identical to the handwritten document, but it also contained additional language, primarily relating to the parties' mutual release of claims and the dismissal of the lawsuit. In that same email, DSW's counsel requested that Zina Eva produce its tax returns for the previous

two years.

Zina Eva's counsel responded with an email dated August 19, 2011. She suggested three minor changes to the formal agreement, but did not comment on the request for tax returns. DSW's counsel then agreed to make two of the three suggested changes and proposed a different way of resolving the third point. However, he again requested the tax returns. In response, in an email dated August 19, 2011, counsel for Zina Eva stated that the returns were "irrelevant and not readily available" and that her client objected to their production.

There was further correspondence about this issue, but the parties' positions did not change. Essentially, DSW took the position that it needed to verify Zina Eva's financial situation before it signed the settlement agreement, whereas Zina Eva contended that the parties' agreement could have been, but was not, made contingent upon such verification, and that if DSW had wanted such a term included in the settlement agreement, that term should have been set forth in the handwritten document executed as part of the mediation conference. DSW brought the matter to a head by noticing Zina Eva's deposition, and Zina Eva responded by filing its motion to enforce the settlement agreement and for a protective order staying further discovery.

## II. Discussion

A federal court has inherent authority to enforce agreements in settlement of litigation before it. See Therma-Scan, Inc. v. Thermoscan, Inc., 217 F.3d 414, 419 (6th Cir. 2000). The party relying on the settlement agreement has the burden of proving its validity. Although there is some suggestion that if the agreement is oral only, the burden of proof is by clear and convincing evidence, see Huffer v. Herman, 168 F.Supp.2d 815, 823 (S.D. Ohio 2001), citing Anschutz v. Radiology Assoc. of Mansfield, Inc., 827 F.Supp. 1338, 1343 (N.D. Ohio 1993), where

there is a written agreement, the burden (under Ohio law) appears to be the same as in any other case based on breach of contract, and that is to "prove by a preponderance of the evidence the existence of the elements of the contract, including offer, acceptance and consideration both as to the existence of the contract and as to its terms." Ohio State Tie & Timber, Inc. v. Paris Lumber Co., 8 Ohio App. 3d 236, 240 (Franklin Co. 1982).

    A threshold question in a case where a settlement agreement is sought to be enforced is which substantive law to apply.  In a case where the federal court's jurisdiction is based solely on diversity of citizenship, as it is here, the Court must apply the forum state's choice of law principles in order to determine which state's law to apply to the question. See Russell v. GTE Government Systems Corp., 232 F.Supp.2d 840, 848 (S.D. Ohio 2002).  Because this is a diversity action, Ohio choice of law principles apply.  Under those principles, because DSW is an Ohio corporation, the litigation was filed in Ohio, and the settlement negotiations occurred in Ohio, the formation and enforceability of any purported settlement agreement is governed by Ohio contract law.  See Bamerilease Capital Corp. v. Nearburg, 958 F.2d 150, 152 (6th Cir. 1992).

    To enforce a settlement agreement, "a district court must conclude that agreement has been reached on all material terms. Ordinarily, an evidentiary hearing is required where facts material to an agreement are disputed. However, no evidentiary hearing is required where an agreement is clear and unambiguous and no issue of fact is present." RE/MAX Int'l, Inc. v. Realty One, Inc., 271 F.3d 633, 645-646 (6th Cir. 2001) (internal citations omitted).  A district court's enforcement of a settlement agreement is appropriate when no substantial dispute exists regarding the entry into and the terms of a settlement agreement.  Id.

4

The primary question presented by Zina Eva's motion is whether the handwritten document contains all the material terms which are required for an agreement to resolve a pending claim for money damages.  The Court concludes that it does.  In Ohio, the terms which must be included in an agreement to settle pending litigation are simply a payment term and an agreement of some sort to release the party against whom the claim for money damages is made from further obligation once the money is paid.  See, e.g., Burrell Industries, Inc. v. Central Allied Enterprises, 1998 WL 896534 (Belmont Co. App. December 15, 1998); see also Fisco v. H.A.M. Landscaping, Inc., 2002 WL 31667300 (Cuyahoga Co. App. November 27, 2002).  As that latter decision points out, even an oral agreement to settle a case is binding as long as it contains the "core terms" of a mutual release and an amount to be paid.  Id. at *1.

The handwritten agreement signed at the mediation conference contains these terms.  It provides that the agreement is intended to effect the parties' desire to "resolve the case," which can be reasonably construed to mean that the parties intended Zina Eva to be released from further obligation on the claim set forth in the complaint, and it sets forth the total amount that Zina Eva must pay to DSW in order to obtain that release.  Had it said no more than that, it would be enforceable, but it also provides a payment schedule for installment payments, for the execution of a promissory note, and the amount of judgment in case of default on that note - all perfectly acceptable terms as well, although not strictly needed in order to constitute a binding settlement agreement.

DSW does not dispute that these terms all appear within the handwritten agreement.  Clearly, these are sufficient terms upon which to resolve an action based on a claim for money damages, and the additional terms which DSW proposed in the formal version

of the agreement are not material.  Even if they were, it appears that Zina Eva and DSW also consented to those terms, as modified by the email exchanges between counsel.  Thus, the record reflects that counsel for both parties signed an agreement that is sufficiently definite and complete to constitute a valid contract.

In its memorandum in opposition to the enforcement of this seemingly complete agreement, DSW makes two conceptually distinct arguments.  The first is that a material term is lacking in the agreement, namely that "Zina Eva lacked assets."  The second is that the agreement was procured through fraud.  The Court addresses each of these arguments separately.

Whether or not Zina Eva (or, for that matter, any other contracting party) possesses any specific amount of assets is not a term which is ordinarily viewed as material to the formation of a contract.  It is clearly not a performance term; rather, it would have been, had it been included in the agreement, a representation which Zina Eva would have made to the effect that certain facts were true about its financial condition at the time of contracting.  Contracting parties are certainly free to make their contractual obligations contingent on the truth of such representations, but the absence of such representations from the written contract typically means that the parties chose not to condition the performance of their respective duties upon certain facts being true or upon one party's receipt of some verification of those facts.  After all, written contracts are ordinarily interpreted based on the four corners of the written agreement, and their terms are limited by application of the parol evidence rule, which excludes any additional terms not embodied in the parties' written agreement. <u>See, e.g, Galmish v. Cicchini</u>, 90 Ohio St. 3d 22, 27 (2000)("the act of embodying the complete terms of an agreement in a writing (the 'integration'), becomes

the contract of the parties"), quoting In re Gaines' Estate, 15 Cal. 2d 255, 264-65 (1940); see also Bellman v. Am. Internat'l Group, 113 Ohio St. 3d 323, 327 (2007) ("[w]hether a contract is integrated ... is not dependent upon the existence of an integration clause to that effect").  At the end of a mediation conference, when parties prepare and sign a written settlement agreement, it is reasonable to assume that the agreement constitutes the parties' complete contract and embodies all of the terms which either party deemed material.

     As part of this argument, DSW seems to be asserting that Zina Eva's production of tax returns - although not, apparently, the presence or absence of any specific information on those tax returns - was somehow a condition precedent to DSW's being bound by the agreement.  Again, one would ordinarily expect conditions precedent to contract formation to be recited in the contract itself, and the parol evidence rule prevents a contract from being varied or contradicted by an alleged oral condition precedent if the same subject is treated within the written contract.  See, e.g., Beatley v. Knisley, 183 Ohio App. 3d 356, 362 (Franklin Co. 2009).

     In this case, DSW has not actually attempted to introduce evidence that the parties specifically agreed that production of the tax returns was a condition precedent to the settlement agreement's becoming effective.  The furthest it has gone on that subject is a statement in its attorney, Joshua D. Rockwell's, affidavit (Doc. #31, Exhibit 1) to the effect that "[i]t is my standard practice to request and obtain tax returns as part of the overall settlement document where, as here, an agreement/proposal is based on a Defendant claiming it has no money to pay Plaintiff's damages."  Whatever his standard practice may be, Mr. Rockwell does not state that he communicated this practice to Zina Eva during the course of the settlement

conference or, more to the point, that DSW and Zina Eva reached a meeting of the minds about whether Zina Eva's production of tax returns was a condition precedent to the formation of a binding settlement agreement.  Even if his affidavit had gone that far, the parol evidence rule would preclude the Court from concluding that the contract included such a term, because the contract, as written, is unconditional; it simply predicates resolution of the lawsuit on Zina Eva's making payment according to the terms set forth in the agreement.  To add a condition such as the one proposed by DSW would vary or alter the contract in a way that is not permitted by the parol evidence rule.  Therefore, the Court finds no merit in the argument that Zina Eva's production of tax returns was either an omitted material term of the contract or a condition precedent to its formation.

DSW's other argument is that it was fraudulently induced to enter into the settlement agreement.  Such a claim is not precluded by the parol evidence rule.  Galmish, 90 Ohio St. 3d at 28.  "A claim of fraud in the inducement arises when a party is induced to enter into an agreement through fraud or misrepresentation."  Abm Farms v. Woods, 81 Ohio St. 3d 498, 502 (1998).  The fraud relates to the facts inducing its execution, not to the nature of the contract.  Id.  To prove fraud in the inducement in this case, or even to create an issue about that matter which might necessitate an evidentiary hearing, DSW must produce evidence that Zina Eva made a knowing, material misrepresentation with the intent of inducing DSW's reliance and that DSW relied upon that misrepresentation to its detriment. Id.

Here, DSW alleges in its memorandum in opposition that it was induced by Zina Eva to settle based on certain representations made by Zina Eva during the mediation concerning Zina Eva's financial condition. DSW, however, has presented no

8

evidence that Zina Eva made any such representations, nor that any of its representations were false.  Instead, it appears to assume that Zina Eva could not have been telling the truth about its financial condition because of its subsequent refusal to produce its tax returns to DSW after the mediation.  However, there is no evidence in the record from which it could be inferred that Zina Eva agreed to produce its tax returns to DSW after the parties had entered into a binding settlement agreement, and this Court cannot interpret its refusal to do so as evidence of fraud.

   Even apart from this failure of proof, to the extent that DSW claims that it reasonably relied on any representations made by Zina Eva as to its financial condition - and the Court has no evidence from which to determine if the key representations were as to its existing financial condition, its expected future financial condition (which would not necessarily be a statement of fact), or both - that claim would fail as well.  During the course of a settlement conference, the party from whom payment is requested often contends that payment of any amount in excess of a certain sum will constitute a financial hardship.  The opposing party need never take such an expression of financial pessimism at face value, but can insist upon seeing proof before agreeing to take a lesser amount.  Alternatively, it can explicitly make any settlement contingent on the later production of such proof.  Although DSW claims it did the latter, the Court has held that it failed to do so in a way that either bound Zina Eva to produce any documentation after the fact, or made the production of such evidence a condition precedent to the effectiveness of the settlement agreement.  Since DSW claims to have perceived the need to verify Zina Eva's statements about its financial condition, it cannot credibly argue, at the same time, that it reasonably relied on those statements, in their unverified form,

in entering into the agreement.  It knew how to protect itself against incorrect representations, and was not coerced in any way to reach a settlement before it had proof in its hands.  It simply chose not to avail itself of the means to insure that it had proof before signing a binding settlement agreement.  Under those circumstances, its reliance, if any, on the veracity of Zina Eva's representations can hardly be deemed reasonable.

### III. Attorney's Fees

Zina Eva requests that the Court award it its reasonable attorney's fees and costs related to its efforts to enforce the settlement and stay discovery in this case. Neither of Zina Eva's motions state the grounds on which such a request should be granted and therefore Zina Eva's request for attorney's fees is denied.

### IV. Motion for Protective Order

Because this Court orders the settlement agreement to be enforced, the motion for protective order staying discovery is moot.

### V. Motion to Strike

Lastly, Zina Eva has moved to strike DSW's memorandum in opposition to the motion to enforce the settlement agreement. Zina Eva claims that in its memorandum, DSW disclosed confidential communications in violation of Local Rule 16.3. Zina Eva requests an Order from this Court striking or alternatively sealing the Memorandum in Opposition, allowing Zina Eva to file a Reply under seal to the Motion to Enforce, prohibiting DSW from further disclosing communications made during the mediation, sanctioning DSW for its disclosure of such information, and holding DSW liable for any damages sustained by Zina Eva's business.  The Court has temporarily sealed the memorandum pending a resolution of this motion.

Local Rule 16.3(c) states that "[i]n order to promote candor

10

and protect the integrity of this Court's ADR processes. . . all communications made by any person . . . during ADR proceedings conducted under the authority of this Court are confidential...." Communications deemed confidential include, but are not limited to "offers to compromise, statements about the value of a case or claim, statements about the strength or weakness of a claim or defense, and statements concerning the possible resolution of all or part of a case."  Local Rule 16.3(c)(2).  Such communications can only be disclosed if they fall under one of the five exceptions laid out in subsection (c)(3) of the rule.

   DSW admits, in its opposing memorandum, that it disclosed confidential communications in its opposition to the motion to enforce, and it does not argue that these communications fall into any one of the exceptions set forth in subsection (c)(3). Rather, DSW argues that Zina Eva "forced DSW's hand" and "opened the door" to disclosure of such communications by filing the Motion to Enforce the Settlement. (Memo. In Opp., Doc. #35, at 1).  The Court disagrees.  Zina Eva's two-page motion to enforce the agreement simply asserts that the parties engaged in mediation, reached an agreement, and put that agreement into writing.  It made no representations about the substance of the settlement negotiations.  Therefore, any additional matters discussed during the mediation conference are confidential and subject to Local Rule 16.3.  In order to make sure these matters do not become public, the Court will make permanent its order to seal DSW's memorandum.

VI. <u>Order</u>

   For the reasons stated above, Zina Eva's motion to enforce the settlement agreement is granted (#29) and its motion for protective order (#30) is denied as moot.  Further, the motion to strike (#34) is granted to the extent that DSW's memorandum in opposition to the motion to enforce (#31) shall remain under

seal.  The parties shall submit an appropriate dismissal entry within fourteen days, after they have executed a formal copy of the settlement agreement and have agreed on the language of the dismissal entry.

                                      /s/ Terence P. Kemp
                                      United States Magistrate Judge